## MOSELEY v. L & L CONSTRUCTION, INC.

[123 N.C. App. 79 (1996)]

ROY J. MOSELEY, JR. AND WIFE, CYNTHIA T. MOSELEY v. L & L CONSTRUCTION, INC.; ROBERT A. WOLFE; EDWARD McDONALD OLLIS, AND COUNTY OF BURKE

No. COA95-1117

(Filed 2 July 1996)

**Building Codes and Regulations § 46 (NCI4th); Municipal Corporations § 450 (NCI4th)— negligence of building inspector alleged—failure of plaintiffs to show special relationship or special duty—negligence action properly dismissed**

The trial court properly dismissed plaintiffs' negligence action against defendant county building inspector and defendant county where plaintiffs alleged that defendants were negligent in various respects in the inspection of their residence during construction, including the failure to locate and require correction of numerous building code violations and structural defects and failure to advise plaintiffs that the house was structurally unsound and unfit for occupation, since a showing that a municipality has undertaken to perform its duties to enforce safety statutes like the North Carolina State Building Code is not sufficient by itself to show the creation of a special relationship with particular individual citizens, and plaintiffs did not show that a special relationship or a special duty was created between them and defendants; furthermore, the court properly dismissed plaintiffs' claim of willful and wanton conduct on the part of defendant building inspector where they alleged no additional facts to support that claim.

**Am Jur 2d, Buildings §§ 32-38; Municipal, County, School and State Tort Liability §§ 184 et seq.**

**Modern status of rule excusing governmental unit from tort liability on theory that only general, not particular, duty was owed under circumstances. 38 ALR4th 1194.**

Appeal by plaintiffs from order entered 1 September 1993 by Judge Robert E. Gaines in Burke County Superior Court. Heard in the Court of Appeals 22 May 1996.

Plaintiffs purchased a house in a subdivision known as High Timbers 31 May 1988. What appeared to be natural settling of the house occurred from 1988-89. In late 1990 evidence of extensive dam-

age as a result of the settling of the house surfaced. The roof began to sag, walls began to crack and bow, and water and sewer lines began to leak and to pond in the crawl space under the house.

In December 1990 the Burke County Health Department and Building Code Administrator separately notified plaintiffs that the residence was in violation of state laws for not meeting requirements with respect to the broken water and sewer pipes and with respect to the structural integrity of the residence. The County Building Code Administrator also included notice that the house would be condemned if necessary remedial action was not taken. A subsequent investigation by consultants disclosed that the house had been built on soft to firm fill, without adequate structural compaction, and that there was a volume of stumps, roots and other organic material in the fill. Under separate investigation, the consultants determined that the house was improperly wired, was never grounded and that the septic tank had been improperly installed. Plaintiffs ultimately had to move out of the house and rent another house in Valdese, North Carolina.

Plaintiffs alleged that defendant Ollis was a building inspector employed by defendant Burke County, and that defendant Burke County's Building Inspection Section issued a permit for construction to L & L Construction, Inc. for the construction of the house which was purchased by plaintiffs. Also alleged was that defendant Ollis purported to perform inspections required by law during construction of the house, including without limitation inspection of the foundation, electrical systems and sanitation systems and that Ollis issued a certificate of final inspection and occupancy for the house. Thereafter, the property changed hands several times before the plaintiffs purchased it in 1988. Plaintiffs alleged that Ollis undertook to perform inspections and failed to use due, reasonable, or proper care and skill in performing the inspections. Furthermore, plaintiffs alleged that Burke County has insurance coverage and may be held liable to plaintiffs for damages sustained by them through the misrepresentations or conduct of Ollis.

The Honorable Robert E. Gaines allowed defendants Ollis and Burke County's motion to dismiss for failure to state a claim upon which relief can be granted. Plaintiffs gave notice of appeal. On 28 December 1993, the defendants made a motion to dismiss appeal alleging that the order from which plaintiffs sought to appeal was interlocutory and not appealable at the time. The Court of Appeals allowed the motion. Plaintiffs filed a voluntary dismissal without prej-

**MOSELEY v. L & L CONSTRUCTION, INC.**

[123 N.C. App. 79 (1996)]

udice as to defendants L & L Construction, Inc. and Robert A. Wolfe. Plaintiffs then gave notice of appeal to the Court of Appeals 17 July 1995.

*Mitchell, Blackwell & Mitchell, P.A., by Hugh A. Blackwell, for plaintiff appellant.*

*Womble Carlyle Sandridge & Rice, P.L.C., by Allan R. Gitter and Robert S. Pierce, for defendant appellees.*

ARNOLD, Chief Judge.

Plaintiffs first argue that the trial court erred in granting defendants Ollis and Burke County's motion to dismiss for failure to state a claim upon which relief could be granted. We disagree.

The applicable standard of review of a Rule 12(b)(6) ruling is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. . . ." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In ruling upon such a motion, the complaint is to be liberally construed, and the court should not dismiss the complaint "unless it appears beyond doubt that plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987).

Plaintiffs' primary claim against defendants Ollis and Burke County is negligence. Plaintiffs sought relief upon the negligence of Ollis and the imputed negligence of his employer, Burke County. Plaintiffs alleged that Ollis undertook to perform inspections on the dwelling in question for the purpose of insuring the safety and security of potential owners of the dwelling and did so without using due care.

Plaintiffs cited the following statutes to support their negligence theory:

N.C. Gen. Stat. § 153A-352 (1991). Duties and responsibilities [of the inspection department and of inspectors within each county as they relate to the construction of buildings, the installation of facilities, and the maintenance of buildings in a safe sanitary and healthful condition]

N.C. Gen. Stat. § 153A-360 (1991). Inspections of work in progress. As the work pursuant to permit progresses, local

inspectors shall make as many inspections of the work as may be necessary to satisfy them that it is being done according to the provisions of the applicable State and local laws and local ordinances and regulations and of the terms of the permit.

N.C. Gen. Stat. § 153A-363 (1991). *Certificates of Compliance.* At the conclusion of all work done under a permit, the appropriate inspector shall make a final inspection. If he finds that the completed work complies with all applicable State and local laws and local ordinances and regulations and with the terms of the permit, he shall issue a certificate of compliance.

N.C. Gen. Stat. § 153A-356 (1991). If a member of an inspection department willfully fails to perform the duties required of him by law, or willfully improperly issues a permit, or gives a certificate of compliance without first making the inspections required by law, or willfully improperly gives a certificate of compliance, he is guilty of a misdemeanor.

This Court recently addressed whether N. C. Gen. Stat. § 160A-411 (1994) *et seq.* and the North Carolina Building Code were safety statutes, intended to promote the safety of the general public. *Sinning v. Clark,* 119 N.C. App. 515, 519, 459 S.E.2d 71, 74, *disc. review denied,* 342 N.C. 194, 463 S.E.2d 242 (1995). The plaintiffs in *Sinning* sought compensatory and punitive damages against the City of New Bern and two of its employees in their official capacities as Administrator for the City's Inspection Department, and a building inspector holding a Level III standard inspection certificate in building, electrical, mechanical and plumbing. *Id.* at 516, 459 S.E.2d at 72.

Plaintiffs were constructing a home in New Bern, North Carolina. *Id.* On several occasions while construction was in progress, the building inspector inspected the residence for building code violations. *Id.* On 20 December 1990, he issued plaintiffs a thirty day temporary certificate of occupancy, permitting plaintiffs to move into their house subject to a number of "small jobs" being completed. *Id.* After moving into the house, plaintiffs discovered several major structural defects in its construction including, but not limited to, sagging and shifting floors, doors failing to close, windows out of plumb, cracked sheetrock and other wall materials, unlevel staircases, cracking brick veneer, leaking roof, and rotting front porch columns. *Id.* Plaintiffs sought to assert claims of negligence, gross negligence and negligent infliction of emotional distress against the City of New Bern and its employees. *Id.*

**MOSELEY v. L & L CONSTRUCTION, INC.**

. [123 N.C. App. 79 (1996)]

The plaintiffs' primary claim against the defendants was premised on the theory of ordinary common law negligence. Plaintiffs alleged that defendants were negligent in various respects in the inspection of their residence during construction, including their failure to locate and require correction of numerous building code violations and structural defects and their failure to advise plaintiffs that the house was structurally unsound and unfit for occupation. *Id.* at 517-518, 459 S.E.2d at 73.

This Court stated,

[t]he public duty doctrine is a common law rule providing for the general proposition that a municipality and its agents ordinarily act for the benefit of the general public and not for a specific individual when exercising its statutory police powers, and, therefore, cannot be held liable for a failure to carry out its statutory duties to an individual.

*Id.* at 518, 459 S.E.2d at 73 (1995) (citing *Braswell v. Braswell,* 330 N.C. 363, 410 S.E.2d 897 (1991), *reh'g denied,* 330 N.C. 854, 413 S.E.2d 550 (1992); *Lynn v. Overlook Development,* 98 N.C. App. 75, 389 S.E.2d 609 (1990), *review allowed* by 327 N.C. 140, 394 S.E.2d 176 (1990), *affirmed in part, reversed in part,* 328 N.C. 689, 403 S.E.2d 469 (1991)). Two exceptions to the public duty doctrine are (1) "where there is a special relationship between the injured party and the municipality" and (2) " 'where the municipality . . . creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered.' " *Braswell,* 330 N.C. at 371, 410 S.E.2d at 902, (quoting *Coleman v. Cooper,* 89 N.C. App. 188, 194, 366 S.E.2d 2, 6, *disc. review denied,* 322 N.C. 834, 371 S.E.2d 275 (1988)).

A showing that a municipality has undertaken to perform its duties to enforce safety statutes like the North Carolina State Building Code is not sufficient, by itself, to show the creation of a special relationship with particular individual citizens. *Sinning* at 519, 459 S.E.2d at 74. Further, to bring themselves within the special duty exception to the public duty doctrine, plaintiffs must show that an actual promise was made to create a special duty, the promise was reasonably relied upon by plaintiffs, and that the plaintiffs' injury was causally related to such reliance. *Braswell* at 371, 410 S.E.2d at 902. "Our courts have applied the two exceptions to the public duty doctrine very narrowly in this State." *Clark v. Red Bird Cab Co.,* 114 N.C.

App. 400, 404, 442 S.E.2d 75, 78, *disc. review denied*, 336 N.C. 603, 447 S.E.2d 387 (1994).

In *City of New Bern v. New Bern Craven Co. Bd. of Ed.*, 338 N.C. 430, 437, 450 S.E.2d 735, 740 (1994), the Supreme Court discussed the significance of the legislature enacting two sets of statutes addressing building inspections. N.C. Gen. Stat. § 160A-411 *et seq.* address the procedures for *city* building inspections and N.C. Gen. Stat. § 153A-350 *et seq.* set forth the procedures for *county* inspections. "This statute [160A-411] does not mandate that the City and the county must agree regarding the provision of inspection services; rather, it provides the options available to the City in determining who shall perform the inspections, one of which is arranging for the county to perform them." *Id.* at 437-438, 450 S.E.2d at 740. Further, N.C. Gen. Stat. § 153A-353 (1991) even allows counties to contract with other counties or with cities to maintain a joint inspection department. Thus, the positions of City building inspector and County building inspector are virtually interchangeable.

The plaintiffs in the present case do not fall within either exception to the public duty doctrine. They have not shown that a special relationship or a special duty was created between them and the defendants. As in the *Sinning* case, we find based on the present facts that Ollis, the building inspector and Burke County owed no duty to the plaintiffs individually. Instead, they owe a duty generally to the public to . . .

> enforce within the county's territorial jurisdiction State and local laws and local ordinances and regulations relating to: (1) The construction of buildings; (2) The installation of such facilities as plumbing systems, electrical systems, heating systems, refrigeration systems, and air-conditioning systems; (3) The maintenance of buildings in a safe, sanitary, and healthful condition, and (4) Other matters that may be specified by the board of commissioners.

N.C. Gen. Stat. § 153A-352 (1991). Thus, the trial court's dismissal of plaintiffs' negligence action against Ollis and Burke County was proper.

Plaintiffs' second assignment of error is that the trial court erred in granting defendants' motion to dismiss plaintiffs' claim of negligent infliction of emotional distress. We disagree.

## MOSELEY v. L & L CONSTRUCTION, INC.

[123 N.C. App. 79 (1996)]

Our Supreme Court's decisions in *Sorrells v. M. Y. B. Hospitality Ventures of Asheville,* 334 N.C. 669, 435 S.E.2d 320 (1993), *and Gardner v. Gardner,* 334 N.C. 662, 435 S.E.2d 324 (1993) are dispositive as to the issue of negligent infliction of emotional distress, and the trial court properly dismissed this claim.

Plaintiffs' final assignment of error is, the allegations in their complaint, if treated as true, are sufficient to withstand defendants' 12(b)(6) motion with respect to their wilful and wanton conduct claim. We disagree.

Plaintiffs base their argument on paragraph 47 of the Complaint:

Upon information and belief, defendant Burke County has insurance coverage such that it is liable under N.C.G.S. § 153A-345 to the plaintiffs for any damages sustained by them by reason of the negligent, fraudulent, wilful and/or wanton misrepresentations and conduct of defendant Ollis and even if it should be determined that he was acting outside the scope of his duties at the times in question.

This is the only factual allegation made relating to any wilful or wanton conduct on behalf of defendant Ollis. Further, the public duty doctrine has previously barred claims of gross negligence.

"The public duty doctrine previously has barred claims of gross negligence. . . . Only where the conduct complained of rises to the level of an intentional tort does the public duty doctrine cease to apply. We have examined plaintiff's complaint and find no difference between the allegations used to support negligence, gross negligence, and the actions plaintiff describes as 'wanton,' 'wilful,' and 'reckless.' As long as the claim is negligence, even couched in terms of 'gross,' 'wanton,' or 'wilful,' the public duty doctrine supports the dismissal of the complaint based on the failure to state a claim." (Citations omitted.)

*Sinning* at 521, 459 S.E.2d at 75 (quoting *Clark* at 406, 442 S.E.2d at 79). In *Sinning,* plaintiffs' primary claim was negligence and they alleged that Linwood E. Toler, a building inspector, had acted in a wilful, wanton way. Likewise, in the present case plaintiffs' primary claim is one of negligence and they have not alleged different facts to support their claim of Ollis' wilful and wanton conduct. Therefore, because plaintiffs failed to allege facts to support their claim of wilful and wanton conduct, it was properly dismissed by the trial court.

Affirmed.

Judges JOHN and McGEE concur.