***********
The Full Commission reviewed the prior Decision and Order, based upon the record of the proceedings before Deputy Commissioner Gheen and the briefs before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. Accordingly, the Full Commission adopts the Decision and Order of Deputy Commissioner Gheen, with modifications.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 2 
 FINDINGS OF FACT
1. Plaintiffs filed a Tort Claim Affidavit with the North Carolina Industrial Commission on July 20, 2007 alleging that Michael Beane (hereinafter "Beane"), an Environmental Health Inspector employed by the Caldwell County Health Department, negligently performed an inspection approving the installation of a septic system on a lot which Plaintiffs were under contract to purchase.
2. Plaintiffs contracted with Little River Developers, LLC to purchase Lot 38, Phase 3, Crystal Falls Subdivision, Caldwell County, North Carolina (hereinafter "Lot 38"). One of Plaintiffs' conditions precedent for the purchase of the property was the suitability of the property for a septic system to be evidenced by a certification of the property by the Caldwell County Health Department.
3. On July 13, 2001, Plaintiffs applied for an Improvement Permit. The application form provides that the property owner is to execute the first section of the application, and the person applying for the permit is listed on the second section. The purpose of the dual signatures is to evidence the right of the Caldwell County Health Department inspector to enter upon the property to make a physical inspection and conduct testing.
4. Defendants presented witnesses who were unaware of any instance where a prospective purchaser of real property indicated they were the owner of the property before the purchase was actually completed. Plaintiff David Crump testified that as a general contractor he had listed himself as a property owner on other applications when he was not the actual owner at the time.
5. The greater weight of the evidence establishes that the Caldwell County Health Department had accepted applications signed by prospective purchasers. Plaintiff David *Page 3 
Crump's testimony is highly credible and forthright. Defendants' witnesses testimony establishes only that they were not aware of other instances in which the purchaser of a property signed the application as an owner, and not the fact such applications had not been filed.
6. After Plaintiffs' application for the Improvement Permit was submitted, the Permit was assigned by Defendant Caldwell County Health Department to Beane.
7. After receiving the assignment, Beane conducted an on-site evaluation of Lot 38.
Beane visited the site, bored test holes as required, and rendered calculations concluding that the lot was suitable for a traditional wastewater septic system. Beane's field notes, drawings and calculations all appear to have complied with applicable administrative standards for performing the analysis.
8. On July 23, 2001, Beane issued an Authorization for Wastewater System Construction Permit (Permit number 017666) to Plaintiffs. Beane also issued an Improvement Permit (Site Soil Evaluation) on or about July 23, 2001. The permits issued by Beane certified the lot for the installation of a traditional wastewater septic system.
9. At all times pertinent hereto, Beane was acting in the course and scope of his employment and in his official capacity as an inspector for the purpose of evaluating suitability for waste water septic systems.
10. Plaintiffs, relying upon the issuance of the Wastewater System Construction Permit, purchased Lot 38 on August 14, 2001 for $80,000.00.
11. Prior to their purchase of Lot 38, Plaintiffs exercised due diligence and reasonably relied upon the representation of Defendants that the Septic System Improvement Permit number 017666 had been properly issued and that the lot was suitable for a wastewater septic system.
12. After purchasing Lot 38, Plaintiffs undertook some grading and land clearing *Page 4 
within 50 feet of the lake abutting the property. This grading and clearing included removing a number of trees where the septic system certified by Beane would be placed. Plaintiffs also made other improvements to the property, including, but not limited to, the construction of a seawall on the lake front portion of the lot at a cost of approximately $45,000.00.
13. Defendants became aware that Beane had certified a septic system for an unrelated property that gave Defendants reason to believe that Beane was not performing inspections in accordance with administrative rules. Defendants appropriately initiated re-inspection of some 25 other properties Beane had inspected. On 23 of the lots which were re-inspected, the soil conditions were entirely inadequate for the septic systems Beane had certified. On two of the lots which were re-inspected, septic systems could be installed as certified by Beane with minor modifications.
14. Joe Lynn, a regional soil scientist with Defendant North Carolina Department of Environment and Natural Resources, was qualified as an expert witness in the field of soil science and waste water disposal systems. His re-testing of Lot 38 establishes that the property is unsuitable for any septic system. Beane certified 48 inches of soil depth on the property, while Lynn's nine separate bore tests found 17, 8, 5, 27, 11, 5, 6, 10 and 8 inches of soil respectively. Lynn opined that Beane's findings are so inconsistent with his test results that, a) soil had been removed from the property subsequent to Beane's evaluation or, b) Beane did not comply with the administrative rules regarding soil testing. While Plaintiffs did disturb some soil following their purchase of Lot 38, there is no evidence, including Lynn's observations, to suggest that soil was removed in the volume necessary to explain the discrepancy between Beane's and Lynn's soil depth findings.
15. Lynn's testing of two properties in the immediate vicinity of Plaintiffs' Lot 38 *Page 5 
establishes that Beane certified 48 inches of soil while Lynn's findings were substantially less.
16. The greater weight of the evidence establishes that, having performed some of the required tests on Lot 38, Beane intentionally certified incorrect soil depths.
17. Ultimately, Beane was criminally charged and pleaded guilty to bribery of a public official in connection with some of the septic permits he issued. Lot 38 was not included within the charges for which Beane entered a plea of guilty, and the evidence fails to establish circumstantially that the developers who owned Lot 38 were involved in a criminal conspiracy with Beane.
18. On November 14, 2004, the Caldwell County Health Department mailed a letter to Plaintiffs informing them that their Improvement Permit and Wastewater System Construction Permit may have been improperly issued.
19. Upon further investigation and retesting of Plaintiffs' property following the November 14, 2004, notification, Defendants determined that the property was not suitable for a wastewater septic system of any type. Defendants revoked Plaintiffs' Improvement Permit/Construction Permit and Plaintiffs were notified of their right to administratively appeal the revocation to the Office of Administrative Hearings.
20. Plaintiffs did not appeal the revocation of the permit because all parties agreed that the subsequent on-site soil re-inspections had correctly determined that Lot 38 had insufficient soil depth and insufficient space to support a wastewater septic system.
21. After receiving the notification that their Improvement Permit/Construction Permit had been revoked, Plaintiffs investigated alternatives to lawfully provide a wastewater septic system to serve Lot 38.
22. In doing so, Plaintiffs discovered that their only option was to purchase a lot *Page 6 
across the street which would be used for the sole purpose of the installation of a wastewater septic system. Plaintiffs purchased that lot for the sum of $20,000.00.
23. The Full Commission finds that Plaintiffs reasonably mitigated their damages by purchasing the additional lot in order to treat wastewater from Lot 38.
24. In order to utilize the new lot for the treatment of wastewater from Lot 38, a pumping system is required in addition to the septic system, to be installed at an additional cost of $8,300.00.
25. The system on Lot 38 would have cost approximately $2,800.00 to install. This is the approximate cost of the wastewater septic system on the new lot, minus the cost of the pumping system.
26. The greater weight of Plaintiffs' evidence establishes damages in the amount of $28,300.00 to purchase the new lot and construct a suitable septic system on the new lot.
27. The damages Plaintiffs have incurred are not attributable to their actions.
28. No evidence was presented showing that Plaintiffs could have further mitigated their damages.
 ***********
Based upon the foregoing findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 143-291(a), the State Tort Claims Act (hereinafter "Act"), confers the Industrial Commission with limited jurisdiction to hear negligence claims against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State. Defendants Beane, in his individual capacity, and the Caldwell County Health Department correctly contend that they are not "other departments, institutions and *Page 7 
agencies of the State," and are not amenable to suit under the Act. The Act must be strictly construed as to issues of jurisdiction and the claims against Beane, in his individual capacity, and the Caldwell County Heath Department must be dismissed. NorthwesternDistributors, Inc. v. DOT,41 N.C. App. 548, 255 S.E.2d 203 (1979), cert. denied,298 N.C. 567, 261 S.E.2d 123 (1979).
2. In Carter v. Stanly County,123 N.C. App. 235, 238, 472 S.E.2d 378, 381 (1996), aff'd,345 N.C. 491, 480 S.E.2d 51 (1997), the North Carolina Court of Appeals concluded, "With regard to sewage treatment and disposal and the issuance of improvement permits, local health departments act as agents of the State and are therefore `immune from suit' in the courts of general jurisdiction, EEE-ZZZ Lay Drain Co.,108 N.C.App. at 28, 422 S.E.2d at 341, unless there exists a liability insurance policy covering the loss with limits in excess of $150,000.00." Thus, the Caldwell County Health Department and its employee, Beane, are considered agents of the state with respect to this claim.
3. Defendants' contention that the public duty doctrine precludes the instant action against the North Carolina Department of Environment and Natural Resources is not well taken. The public duty doctrine precludes individuals plaintiffs from successfully bringing tort action claims against government entities for the failure to perform statutory duties when those duties are owed to the general public. Stone v. N.C. Dept. of Labor,347 N.C. 473, 482, 495 S.E.2d 711, 716 (1998). However, when the government assumes a duty to a certain individual, two major exceptions to the public duty doctrine, the "special duty" exception and the "special relationship" exception, have been recognized by the North Carolina courts in order to "prevent inevitable inequities to certain individuals." Braswell v. Braswell,330 N.C. 363, 371, 410 S.E.2d 897, 902 (1991). *Page 8 
4. The "special duty" exception is comprised of three elements: (1) a governmental entity made a promise of protection to an individual, (2) the entity failed to protect that individual, and (3) the individual relied on the promise and was injured as a result. Id. Here, Plaintiffs applied for an improvement permit to install a traditional wastewater septic system on Lot 38 while under contract to purchase the lot. The permit, which was issued by Beane, was subsequently revoked after it was determined that it had been improperly issued. In Watts v. North Carolina Dept. of Env'tand Natural Res., 182 N.C. App. 178, 641 S.E.2d 811 (2007),modified and aff'd, 362 N.C. 497, 666 S.E.2d 752 (2008), the plaintiff applied for and was issued a septic system permit for an undeveloped lakefront lot while under contract to purchase the lot. After requesting a new permit to account for a construction design change, the North Carolina Department of Environment and Natural Resources discovered that the land was unsuitable for a septic system and revoked the previously issued permit. The Court of Appeals rejected the contention of the North Carolina Department of Environment and Natural Resources that the public duty doctrine barred the plaintiff's recovery under the Tort Claims Act, concluding that the defendant, "made a promise to plaintiff by issuing the improvement permit warranting that plaintiff could construct a three-bedroom home on the property as described in the site plan." Id. at 184, 641 S.E.2d at 817. While Defendants correctly assert that the Watts decision can be distinguished from the present case upon the fact that the North Carolina Department of Environment and Natural Resources admitted negligence in Watts, the reasoning of the Court of Appeals regarding the application of the "special duty" exception is persuasive in the instant case. Thus, the issuance of a permit in this case amounts to a promise within the meaning of the "special duty" exception. With respect to the remaining elements of the "special duty" exception, breach and reliance causing damages, Plaintiffs have satisfied both elements. *Page 9 
Defendants breached their promise that the land was suitable for a septic system, and Plaintiffs relied on that promise in their decision to proceed with the purchase and improvement of the land, and were damaged in the amount of $28,300.00 when it was concluded that Lot 38 was unsuitable for a septic system and the previously issued permit was revoked.
5. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties.Bolkir v. N.C. State University,321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988). Beane, as agent of the North Carolina Department of Environment and Natural Resources, was negligent in issuing Plaintiffs' Wastewater System Construction Permit number 017666 and the Improvement Permit (Site Soil Evaluation), and as a direct and proximate result of the negligence of the North Carolina Department of Environment and Natural Resources' agent, Plaintiffs have been damaged in the amount of $28,300.00. N.C. Gen. Stat. § 143-291.
6. Defendants' contention that Plaintiffs' action against Defendant North Carolina Department of Environment and Natural Resources is precluded because Plaintiffs have not exhausted their administrative remedies is not well taken. Whether one has standing to obtain judicial review of an administrative decision is a question of subject matter jurisdiction.Carter v. North Carolina State Bd. of Registration forProfessional Engineers Land Surveyors,86 N.C. App. 308, 357 S.E.2d 705 (1987). In the instant case, Plaintiffs did not file an administrative appeal of the decision to rescind Plaintiffs' permit to the Office of Administrative Hearings. N.C. Gen. Stat. § 150B-23. As the evidence unequivocally establishes that the Plaintiffs' Lot 38 would not support a septic system of any nature, an administrative appeal in this case would be futile and, therefore, exhaustion of administrative remedies is excused.Hentz v. Asheville City Bd. of Educ.,189 N.C. App. 520, 658 S.E.2d 520 (2008). *Page 10 
7. Defendants contend that proof of Beane's criminal conviction for bribery of a public official, his highly inaccurate soil measurements, and Lynn's expert opinion that Beane's highly inaccurate report must be fraudulent, all prove that Beane's survey of Lot 38 was an intentional act. Intentional injuries are not within the jurisdiction of the Act, only claims for negligence are covered. Fennell ex re. Estate of Fennell v. North Carolina Dept.of Crime Control and Public Safety,145 N.C. App. 584, 551 S.E.2d 486 (2001), cert. denied,355 N.C. 285, 560 S.E.2d 800 (2002). The evidence in the present case establishes that Beane's breach of duty to perform the soil test was intentional, but the evidence does not compel a conclusion that Beane intended to cause injury to Plaintiffs. Our Supreme Court has held that, "[a] breach of duty may be willful while the resulting injury is still negligent. Only when the injury isintentional does the concept of negligence cease to play a part. We have noted the distinction between the willfulness which refers to a breach of duty and the willfulness which refers to the injury. In the former only the negligence is willful, while in the latter the injury is intentional." Pleasant v. Johnson,312 N.C. 710, 325 S.E.2d 244 (1985).
8. Defendant further contends that Beane was acting outside of the scope of his employment because Plaintiff David Crump incorrectly signed the application for a septic system as owner of the property and disturbed soil during improvements to the property that invalidate the permit that Beane issued. The undisputed evidence of record establishes that Plaintiffs' permit was not rescinded due to Plaintiff David Crump's incorrect execution of the application as owner of the property or due to soil disruption. Under the offer to purchase and contract, Plaintiff David Crump acted as legal representative in applying for the septic permit.Helms v. Holland, 124 N.C. App. 629, 478 S.E.2d 513 (1996).
 *********** *Page 11 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiffs' claims against Beane, in his individual capacity, and the Caldwell County Health Department are DISMISSED WITH PREJUDICE.
2. Plaintiffs shall have and recover of the Defendant North Carolina Department of Environment and Natural Resources and said Defendant shall pay Plaintiffs the sum of $28,300.00 as money damages.
3. Defendant shall pay the costs.
This the 17th of June, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1