DAVID CRUMP AND WIFE, SHARON CRUMP, PLAINTIFFS v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES AND CALDWELL COUNTY HEALTH DEPARTMENT, DEFENDANTS

No. COA10-1138

(Filed 20 September 2011)

**Tort Claims Act—negligent inspection by state environmental health specialist—intentional certification of incorrect soil depths—jurisdiction**

The Industrial Commission did not err by requiring defendant North Carolina Department of Environment and Natural Resources to pay $28,300.00 to plaintiffs based on the negligent actions of an environmental health specialist who intentionally certified incorrect soil depths and issued a wastewater system construction permit to plaintiffs even though the inspected property was not suitable for any type of septic system. However, because the evidence did not establish the specialist intended to injure plaintiffs, the Commission properly concluded that plaintiffs' claim was within the jurisdiction of the State Tort Claims Act.

Appeal by defendant North Carolina Department of Environment and Natural Resources from Decision and Order entered 28 June 2010 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 February 2011.

*Wake Forest University School of Law Appellate Advocacy Clinic, by John J. Korzen; and Todd, Vanderbloemen & Brady, P.A., by Charles A. Brady, III, for plaintiffs-appellees.*

*Attorney General Roy Cooper, by Assistant Attorney General Donna B. Wojcik, for defendant-appellant.*

GEER, Judge.

Defendant North Carolina Department of Environment and Natural Resources ("NCDENR") appeals from the Industrial Commission's Decision and Order requiring NCDENR to pay $28,300.00 to David and Sharon Crump. NCDENR was ordered to pay this sum to the Crumps due to the negligent actions of Michael Beane, an environmental health specialist who intentionally certified incorrect soil depths and issued a wastewater system construction permit to the Crumps even though the property that Beane inspected was not suitable for any type of septic system. NCDENR primarily argues that the

Crumps' claim does not fall within the State Tort Claims Act since Beane acted intentionally. Because, however, the evidence did not establish that Beane intended to injure the Crumps, the Commission could still conclude, as it did, that the Crumps' claim was within the jurisdiction of the State Tort Claims Act. Therefore, we affirm the Decision and Order.

Facts

The Crumps contracted to purchase Lot 38 in a subdivision in Caldwell County, North Carolina. A condition precedent for the purchase was that the property be suitable for a septic system, which was to be determined by certification of the property by the Caldwell County Health Department. On 13 July 2001, the Crumps applied for an improvement permit, and the application was randomly assigned to Beane.

Beane conducted an on-site evaluation of Lot 38 and concluded that the lot was suitable for a traditional wastewater septic system. The Commission found that Beane "visited the site, bored test holes as required, and rendered calculations concluding that the lot was suitable for a traditional wastewater septic system. Beane's field notes, drawings and calculations all appear to have complied with applicable administrative standards for performing the analysis." On 23 July 2001, Beane issued to plaintiffs an "Authorization for Wastewater System Construction Permit" together with an "Improvement Permit (Site Soil Evaluation)." These permits certified Lot 38 for installation of a traditional wastewater septic system.

In reliance on the issuance of the wastewater system construction permit, the Crumps purchased Lot 38 on 14 August 2001 for $80,000.00. They then made various improvements to the lot, including grading and land clearing where the septic system was to be placed.

NCDENR eventually became aware that Beane had made a certification of a septic system for an unrelated property that, according to the Commission, "gave Defendants reason to believe that Beane was not performing inspections in accordance with administrative rules." NCDENR and the Caldwell County Health Department, therefore, reinspected 25 other properties inspected by Beane. On 23 of those lots, they found the soil conditions "entirely inadequate" for the septic systems Beane had certified. On two of the lots, septic systems could be installed as certified by Beane with minor modifications.

On 14 November 2004, the Caldwell County Health Department mailed a letter to the Crumps, which informed them that their

improvement permit and wastewater system construction permit may have been improperly issued. Defendants retested Lot 38, determined that the lot was not suitable for any type of wastewater septic system, and revoked the Crumps' permit.

The Crumps then began investigating alternatives in order to lawfully provide a wastewater septic system to service Lot 38. The Crumps discovered that their only option was to purchase a lot across the street from Lot 38 and use it for the sole purpose of installing a wastewater septic system. They purchased the lot for $20,000.00. In order to use this lot to treat wastewater from Lot 38, a pumping system, costing an additional $8,300.00, was required in conjunction with the septic system, which by itself would have cost only $2,800.00 to install.

Joe Lynn, a regional soil scientist with defendant NCDENR, retested Lot 38. Although Beane had certified that the lot had a soil depth of 48 inches, Lynn conducted nine separate bore tests that found only 17, 8, 5, 27, 11, 5, 6, 10, and 8 inches of soil respectively. Lynn concluded that Beane's findings were so inconsistent with Lynn's that either (1) soil had been removed from the property subsequent to Beane's evaluation or (2) Beane did not comply with the administrative rules regarding soil testing. Because there was no evidence that plaintiffs had removed soil in a sufficient amount to account for the discrepancy and because testing of two properties in the immediate vicinity of Lot 38 also resulted in substantially less than 48 inches of soil, the Commission found that "[t]he greater weight of the evidence establishes that, having performed some of the required tests on Lot 38, Beane intentionally certified incorrect soil depths."

Ultimately, Beane was criminally charged and pled guilty to bribery of a public official in connection with some of the septic permits he issued. Lot 38 was not included in the charges resulting in Beane's guilty plea, and the Commission found that "the evidence fails to establish circumstantially that the developers who owned Lot 38 were involved in a criminal conspiracy with Beane."

On 20 July 2007, the Crumps filed a claim pursuant to the North Carolina State Tort Claims Act against Beane, the North Carolina Department of Health and Human Services ("NCDHHS"), and the Caldwell County Health Department.[1] On 15 December 2009, the

---

1. The Crumps originally filed their claim against NCDHHS, and the deputy commissioner's Decision and Order refers to NCDHHS. The Full Commission's Decision

deputy commissioner filed a Decision and Order finding in favor of the Crumps and ordering the State to pay damages in the amount of $28,300.00. The Decision and Order dismissed with prejudice the claims against Beane, in his individual capacity, and the Caldwell County Health Department. On 17 December 2009, NCDENR filed notice of appeal to the Full Commission. On 28 June 2010, the Full Commission entered its Decision and Order adopting the Decision and Order of the deputy commissioner with modifications. NCDENR timely appealed to this Court.

## Discussion

When this Court reviews a Decision and Order from the Commission, we are " 'limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision.' " *Gonzales v. N.C. State Univ.*, 189 N.C. App. 740, 744, 659 S.E.2d 9, 12 (2008) (quoting *Simmons v. Columbus Cnty. Bd. of Educ.*, 171 N.C. App. 725, 728, 615 S.E.2d 69, 72 (2005)). *See also* N.C. Gen. Stat. § 143-293 (2009) ("[A]ppeal shall be for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them.").

As long as the Commission's decision is supported by competent evidence, it does not matter if some of the evidence could support a conflicting finding. *Simmons*, 171 N.C. App. at 728, 615 S.E.2d at 72. The Commission's conclusions of law are, however, reviewed de novo. *Holloway v. N.C. Dep't of Crime Control & Pub. Safety/N.C. Highway Patrol*, 197 N.C. App. 165, 169, 676 S.E.2d 573, 576 (2009).

Under the State Tort Claims Act, N.C. Gen. Stat. § 143-291(a) (2009), the Industrial Commission has jurisdiction over claims that "arose as a result of the negligence of any . . . agent of the State while acting within the scope of his . . . employment . . . under circumstances where the State of North Carolina, if a private person, would be liable to the claimant . . . ." The Supreme Court has explained that "[u]nder the Tort Claims Act, jurisdiction is vested in the Industrial Commission to hear claims against the State of North Carolina for personal injuries sustained by any person as a result of the negligence of a State employee while acting within the scope of his employ-

---

and Order, however, substitutes NCDENR for NCDHHS. The record does not indicate how the caption came to be changed, although it is apparent that NCDENR is, in fact, the proper defendant.

ment." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 536, 299 S.E.2d 618, 626 (1983).

NCDENR, in arguing that the Commission lacked subject matter jurisdiction, first contends that Beane was not acting as an agent of the State. NCDENR acknowledges that "[c]ounty environmental specialists/sanitarians conducting soil evaluations for septic systems are considered to be agents of [NCDENR] when they have been authorized pursuant to 15A NCAC 010.0101-.0103, and if they are enforcing N.C.G.S. § 130A-333 *et.* [sic] *seq. . . .*" *See Carter v. Stanly Cnty.*, 123 N.C. App. 235, 238, 472 S.E.2d 378, 381 (1996) (holding that local health departments, their directors, and registered sanitarians act as State agents "[w]ith regard to sewage treatment and disposal and the issuance of improvement permits"), *aff'd per curiam*, 345 N.C. 491, 480 S.E.2d 51 (1997). *See also* 15A N.C. Admin. Code § 18A.1938 (2010) ("The permitting of a wastewater system shall be the responsibility of agents authorized by the State . . . and registered with the State of North Carolina Board of Sanitarian Examiners . . . .").

The Commission's conclusion, citing *Carter*, that "the Caldwell County Health Department and its employee, Beane, are considered agents of the state with respect to this claim," was supported by the Commission's finding that "[a]t all times pertinent hereto, Beane was acting in the course and scope of his employment and in his official capacity as an inspector for the purpose of evaluating suitability for waste water septic systems." NCDENR contends, however, that "the evidence shows that Beane was not acting as an agent of [NCDENR] when he issued the improvement permit for Lot 38, because he was not enforcing the rules of the Health Commission. He was acting outside the scope of his authority."

In support of this contention, NCDENR relies on *Cates v. N.C. Dep't of Justice*, 346 N.C. 781, 786, 487 S.E.2d 723, 726 (1997), pointing to the Supreme Court's holding that a registered sanitarian employed by the Durham County Health Department was not enforcing the rules when he conducted a preliminary soil evaluation and when "[t]he rules of the Commission [did] not require or make any provision for preliminary soil evaluations." Because the State rules did not encompass preliminary soil evaluations, the Court concluded that "a local sanitarian who conducts a preliminary soil evaluation is providing a local service and is not enforcing the rules of the Commission." *Id.*

NCDENR contends that Beane, like the sanitarian in *Cates*, was not actually enforcing the State regulations and, therefore, was not acting as an agent of the State. NCDENR's reliance on *Cates* is misplaced. The basis for the decision in *Cates* was the fact that the State's "rules provide for the issuance or denial of an improvements permit but not for the assurance of future permitability." *Id.* The sanitarian was not acting for the State because he was assuring future permitability—not a State function—and not issuing or denying an improvements permit. Indeed, no one had even applied for an improvements permit. *Id.*

Here, however, the Crumps filed an application for a permit for a wastewater septic system, Beane performed the inspection, and Beane issued a permit to the Crumps for a wastewater septic system on Lot 38. Thus, Beane was acting within the scope of the authority set out in 15A N.C. Admin. Code § 18A.1938 to issue or deny improvements permits and, under *Cates*, he was acting as an agent of the State.

NCDENR next contends that the Crumps' claim does not fall under the State Tort Claims Act because Beane acted intentionally and not negligently. The Supreme Court has held that "[i]njuries intentionally inflicted by employees of a State agency are not compensable under the North Carolina Tort Claims Act." *Givens v. Sellars*, 273 N.C. 44, 50, 159 S.E.2d 530, 535 (1968). NCDENR points to the Commission's finding that Beane "intentionally certified incorrect soil depths" and argues that this finding precludes any award under the State Tort Claims Act.

While the Commission, in this case, found that Beane had intentionally certified incorrect soil depths, it concluded that "Beane, as agent of [NCDENR], was *negligent* in issuing Plaintiffs' Wastewater System Construction Permit number 017666 and the Improvement Permit (Site Soil Evaluation), and as a direct and proximate result of *the negligence* of [NCDENR's] agent, Plaintiffs have been damaged in the amount of $28,300.00." (Emphasis added.) Our Supreme Court has held that "[n]egligence is a mixed question of law and fact, and the reviewing court must determine whether the Commission's findings support its conclusions." *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988). Under the State Tort Claims Act, "negligence is determined by the same rules as those applicable to private parties." *Id.*

NCDENR overlooks the fact that the focus is not on whether Beane's actions were intentional, but rather on whether he intended

to injure or damage the Crumps. As the Supreme Court explained in *Givens*, 273 N.C. at 50, 159 S.E.2d at 535 (emphasis added) (quoting *Foster v. Hyman*, 197 N.C. 189, 191, 148 S.E. 36, 38 (1929)), " '[a] breach of duty may be wanton and wilful while the act is yet negligent; the idea of negligence is eliminated only when the *injury or damage* is intentional.' "

The leading North Carolina case addressing when an intentional act may still amount to negligence is *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985). In that decision, the Supreme Court wrote:

> Defining "willful negligence" has been more difficult. At first glance the phrase appears to be a contradiction in terms. The term "willful negligence" has been defined as the intentional failure to carry out some duty imposed by law or contract which is necessary to the safety of the person or property to which it is owed. A breach of duty may be willful while the resulting injury is still negligent. Only when the injury is intentional does the concept of negligence cease to play a part. We have noted the distinction between the willfulness which refers to a breach of duty and the willfulness which refers to the injury. In the former only the negligence is willful, while in the latter the injury is intentional.

*Id.* at 714-15, 325 S.E.2d at 248 (internal citations omitted).

This Court has similarly explained:

> Willful negligence arises from the tort-feasor's willful breach of a duty arising by operation of law. The tort-feasor must have a deliberate purpose not to discharge a legal duty necessary to the safety of the person or property of another. This willful and deliberate purpose not to discharge a duty differs crucially for our purposes from the willful and deliberate purpose to inflict injury—the latter amounting to an intentional tort.

*Siders v. Gibbs*, 39 N.C. App. 183, 187, 249 S.E.2d 858, 860 (1978) (internal citations omitted). *See also Britt v. Hayes*, 142 N.C. App. 190, 193, 541 S.E.2d 761, 763 (2001) ("Based on this precedent we now restate the principle that defendant's conduct precludes an action for negligence only when defendant intended to injure the plaintiff.").

The Commission properly based its award to the Crumps on these principles. The Commission noted that NCDENR had contended—just as it argues on appeal—"that proof of Beane's criminal conviction for bribery of a public official, his highly inaccurate soil

CRUMP v. N.C. DEP'T OF ENV'T & NATURAL RES.

[216 N.C. App. 39 (2011)]

measurements, and [NCDENR's expert witness'] opinion that Beane's highly inaccurate report must be fraudulent, all prove that Beane's survey of Lot 38 was an intentional act." The Commission then acknowledged that "[i]ntentional injuries are not within the jurisdiction of the Act[;] only claims for negligence are covered." The Commission concluded, however, relying upon *Pleasant*, that "[t]he evidence in the present case establishes that Beane's breach of [his] duty to perform the soil test was intentional, but the evidence does not compel a conclusion that Beane intended to cause injury to Plaintiffs."

We agree with the Commission's analysis. While the Commission found that Beane's certification of inaccurate soil depths was intentional, it determined that his issuance of the two permits to the Crumps constituted negligence. The evidence cited by NCDENR is sufficient to prove an intentional failure to carry out the duty imposed on Beane regarding site inspections and issuing permits. NCDENR, however, cites no evidence and the Commission found none that required the Commission to find that Beane intended to injure the Crumps. The Commission's findings—and the evidence supporting those findings—establish willful negligence rather than intentional injury. *See Lynn v. Burnette*, 138 N.C. App. 435, 443, 531 S.E.2d 275, 281 (2000) (holding that when defendant intentionally shot at tire on plaintiff's vehicle but bullet struck plaintiff, plaintiff could proceed with claim for negligence).

NCDENR argues, however, that Beane made a fraudulent misrepresentation and that our Supreme Court has held that "[n]either intentional misrepresentation nor conspiracy to defraud is negligence, and injuries intentionally inflicted are not compensable under the Torts Claim [sic] Act." *Davis v. N.C. State Highway Comm'n*, 271 N.C. 405, 408, 156 S.E.2d 685, 687 (1967). While this language in *Davis* appears to be *dicta* since the case did not involve a State Tort Claims Act claim, the *Davis* Court nonetheless recognized the need for an intentional injury. In *Davis*, the plaintiffs alleged that the defendants made their misrepresentation specifically in order to induce the plaintiffs to vacate their home. *Id.* at 406, 156 S.E.2d at 686. Since the plaintiffs' alleged injury was the vacating of their property, the purpose of the misrepresentation was in fact to cause the injury, making the injury intentional. *Id.*

In contrast to *Davis*, nothing in the record in this case suggests that Beane intended, through his misrepresentations, to cause the Crumps' injury, which was their purchase of a property on which a septic system could not be installed. The Commission, therefore, prop-

erly concluded that the Crumps were entitled to recover for negligence. Since NCDENR asserts no other basis for reversal of the Commission's Decision and Order, we affirm.

Affirmed.

Judges STEPHENS and McCULLOUGH concur.